IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MOHAMMED ALSAYIRI,

      Plaintiff,

v.                                                                      Case No. 3:23-CV-03110-NJR

CRUCIAL MDH,

      Defendant.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

      This matter is before the Court on a Motion for Leave to Proceed *in forma pauperis*, as well as a separate Motion for Recruitment of Counsel, filed by Plaintiff Mohammed Alsayiri. (Docs. 4 & 5). Alsayiri initially filed this employment discrimination lawsuit pursuant to Title VII of the Civil Rights Act of 1967, as amended, 42 U.S.C. § 2000e-5 and/or 42 U.S.C. § 1981, on September 15, 2023. (Doc. 3). After preliminary review of his complaint under 28 U.S.C. § 1915(a)(1), the Court found Alsayiri's factual allegations to be too bare bones to state a claim. (Doc. 9). Thus, the Court dismissed the complaint without prejudice and granted Alsayiri leave to file an amended complaint. *Id.* The Court reserved ruling on Alsayiri's Motion for Leave to Proceed *in forma pauperis* and his Motion for Recruitment of Counsel. *Id.*

      Alsayiri filed an amended complaint alleging that Defendant Crucial MDH discriminated against him on the basis of his race, national origin, and religion. (Doc. 11).[1]

---

[1] Alsayiri's filing is labeled as a "Response." (Doc. 11). This appears to be a labeling error because the

Alsayiri claims he was assigned menial tasks, treated with disrespect, excluded from work-related meetings and events, and ultimately terminated from his position for discriminatory reasons. *Id.* As explained more fully below, Alsayiri's amended complaint states a viable claim for relief under Title VII of the Civil Rights Act of 1967, as amended, 42 U.S.C. § 2000e-5 and/or 42 U.S.C. § 1981. Accordingly, Alsayiri's Motion for Leave to Proceed *in forma pauperis* is granted. The Motion for Recruitment of Counsel is denied without prejudice.

## THE AMENDED COMPLAINT

On November 29, 2021, Alsayiri met with an individual named "Sam" for a job interview at Crucial MDH. (Doc. 11 at 10). Alsayiri was hired "on the spot" as a full-time maintenance technician. *Id.* at 10, 103. As a practicing Muslim, Alsayiri conducted two of five daily prayers during working hours. *Id.* at 10. On one occasion, the CEO of the company (identified solely as "Marc") saw Alsayiri praying. *Id.* From that moment on, Alsayiri alleges, Marc treated him differently by speaking to him in a "gruff" tone and ordering him to complete menial tasks, like making and relocating shelves. *Id.* at 10, 13.

On January 31, 2022, Marc instructed Alsayiri to work in the "tedlar" department at a location in Foristell, Missouri. *Id.* at 11. At the Foristell location, a coworker identified as "Carly" allegedly told Alsayiri in a disrespectful tone that he should work with an individual named "Eric," and not in the tedlar department. *Id.* This created a confusing

---

document remedies several of the errors identified in the Court's October 2023 Order and was filed on the day his amended complaint was due. Accordingly, the Court construes this filing (Doc. 11) as Alsayiri's amended complaint.

situation for Alsayiri, who allegedly found himself trying to "avoid Carly" while completing the project he was assigned. *Id.*

The following week, Alsayiri was back at his original location in Murphysboro, Illinois. *Id.* at 12. At that time, he met a new manager named "Wesley." *Id.* Wesley did not have a key to the hangar, so Alsayiri made a copy of his key for Wesley, paying for it out of pocket. *Id.* Although Alsayiri apparently got along well with Wesley initially, he noticed that he was quickly excluded from Wesley's meetings with Marc and others. *Id.* Marc and Wesley also ordered lunches for the team but excluded Alsayiri. *Id.*

Approximately two weeks later, in late February 2022, Alsayiri traveled to Dallas with a coworker named "Eric." *Id.* at 12. Alsayiri flew in first class and played golf on this trip, which gave him a "gut feeling that something was not right." *Id.* After Alsayiri returned from Dallas, Wesley allegedly approached him and asked him why he told Eric that he did not like his job. *Id.* at 13. Alsayiri denied telling Eric anything of the sort, but Wesley allegedly ended the conversation without resolution. *Id.*

At this point, it became clear to Alsayiri that Marc and Wesley were treating him differently than his coworkers. Wesley frequently bought lunch for the team and invited them to eat as a group in a meeting room. *Id.* Alsayiri was excluded from these lunch meetings. *Id.* On March 16, 2022, Alsayiri approached his workstation after completing a training session and found his belongings thrown on the floor. *Id.* at 14. A day later, Marc, Wesley, and several other employees went outside to tour an airplane, and when Alsayiri followed them, Wesley approached him and asked him loudly what he wanted. *Id.*

Because this interaction happened in view and earshot of Alsayiri's coworkers, he found himself humiliated and embarrassed. *Id.*

On the morning of March 17, 2022, Alsayiri sent an email to Marc, the CEO, in hopes of improving his situation and standing at Crucial MDH. *Id.* Later that same morning, Wesley told Alsayiri that the company was "having some issues" and that there were no hours for him the following week. *Id.* Alsayiri was ostensibly surprised by this news from Wesley because he had recently learned from a coworker named "Simon" that the company had increased Simon's hours. *Id.* During this meeting, Alsayiri mentioned that he had been excluded from meetings and lunches and that this caused him to feel unwelcome. *Id.* Wesley responded by telling Alsayiri that he could quit if he wanted to do so. *Id.* When Alsayiri told him he would not quit but that he felt he had been treated unfairly, Wesley interrupted him, asking bluntly "Are you calling me a racist?" *Id.* When Alsayiri tried to respond, Wesley left the conversation and came back with Marc. *Id.* at 15. Marc then told Alsayiri "I have heard enough, you are fired." *Id.* Marc demanded that Alsayiri return his key (the one Alsayiri had paid for out of pocket), which Alsayiri did after breaking it in half. *Id.* Alsayiri also demanded a written termination letter from Marc, which Marc provided to him. *Id.*

Alsayiri filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights on March 25, 2023.[2] (Doc. 11 at 109). Alsayiri's charge alleges that he was terminated due to

---

[2] Under 42 U.S.C. § 2000e-5(e)(1), a plaintiff has 300 days, at most, to file a written charge with the EEOC. It is unclear whether Alsayiri's filing with the EEOC met this deadline. The record suggests he filed two

his race, national origin, and religion. *Id.* at 103. His charge specifically cites his interactions with "Carly" who allegedly "prevented [him] from learning a job" in the tedlar department. *Id.* at 107. He also contends that his coworkers who did not share his national, religious or racial background were treated more favorably, mentored, and trained, whereas he was not. *Id.* The EEOC dismissed Alsayiri's charge on June 25, 2023, and notified him that he had 90 days to file suit. *Id.* at 113. Alsayiri did so and filed a complaint in this Court on September 15, 2023.

## DISCUSSION

### A. Motion for Leave to Proceed *In Forma Pauperis*

The first step in determining Plaintiff's IFP status is to assess his ability to pay a filing fee. 28 U.S.C. § 1915(a)(1). On this point, the Court previously found that Alsayiri was indigent and thus unable to pay such a fee. (Doc. 9). The Court sees no reason to disturb this finding. Alsayiri's financial condition, as laid out in his motion to proceed *in forma pauperis* (Doc. 4), justifies his IFP status.

But that does not end the inquiry. Under Section 1915(e)(2), the Court must then screen an indigent plaintiff's complaint and dismiss it if it is clearly frivolous or malicious,

---

separate charges with the EEOC. He submitted charge documents and a right to sue letter from the EEOC in a matter with the Charge No. 560-2023-01404. (Doc. 11 at 103, 113). According to these submissions, Alsayiri filed his charge with the EEOC on March 25, 2023, more than a year after he was terminated from his position at Crucial MDH. *Id.* at 109. The EEOC's right to sue letter in Charge No. 560-2023-01404 therefore states — perhaps unsurprisingly — that Alsayiri's charge was not filed withing the applicable time limit under section 2000e-5(e)(1). *Id.* at 113. But in addition to the possibly untimely filing in Charge No. 560-2023-01404, the EEOC filings indicate that Alsayiri filed another charge related to his employment at Crucial MDH on April 23, 2022. *Id.* at 111. This filing was assigned Charge No. 560-2022-1600 and would appear to be timely under section 2000e-5(e)(1). The record does not reveal any charge documentation or agency action related to Charge No. 560-2022-1600. *Id.* For that reason, the Court is unable to assess the timeliness of Alsayiri's filing with the EEOC based on the record before it.

fails to state a claim, or is a claim for money damages against an immune defendant. 28 U.S.C. § 1915(e)(2)(B); *see also Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003) ("District judges have ample authority to dismiss frivolous or transparently defective suits spontaneously, and thus save everyone time and legal expense."). Thus, resolution of the motion to proceed IFP requires the undersigned to review the allegations of the complaint.

In reviewing the complaint, the undersigned is aware that courts construe *pro se* claims generously. *Buechel v. United States*, 746 F.3d 753, 761 (7th Cir. 2014). The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels, however, are not enough. The complaint must allege enough facts to "state a claim to relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (internal quotation marks and citation omitted). That means "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphases omitted). "[I]nstead . . . the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* at 404.

Title VII prohibits employers from discriminating against employees because of their race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). A Title VII discrimination claim requires a showing that an adverse employment action was

motivated by discriminatory animus. *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). "The statute also forbids employers from retaliating against employees for complaining about prohibited discrimination" and "subjecting an employee to a hostile work environment." *Id.* Likewise, 42 U.S.C. § 1981 prohibits discrimination on the basis of race in the making and enforcing of contracts, including employment contracts. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459 (1975). And section 1981 also provides a federal remedy against racial discrimination in private employment. *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 789 (7th Cir. 2019).

Courts apply the same standards to analyze claims under Title VII and Section 1981. *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015). A plaintiff states a claim of discrimination under Title VII or § 1981 by asserting that: (1) he is a member of a protected class; (2) he was meeting the employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated, non-protected class member. *See Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005). An adverse employment action is "a materially adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (cleaned up). Furthermore, the action must be "materially adverse," not merely an "inconvenience or a change in job responsibilities." *Hilt–Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). Title VII does not provide a remedy for actions that do not affect an employee's terms of employment. *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th

Cir. 1996) (stating that "not everything that makes an employee unhappy is actionable adverse action").

Here, Alsayiri offers detailed allegations of discriminatory and demeaning treatment he experienced over his three-and-a-half-month employment at Crucial MDH. He alleges that "Marc" began treating him differently after he saw him praying consistent with his Muslim faith. He also alleges an instance in which "Carly" prohibited him from working in the company's tedlar department in Foristell, Missouri, for no apparent reason. Alsayiri was allegedly assigned menial tasks like putting together and relocating shelves. *Cf. Alamo*, 864 F.3d at 553 (excessive assignments of undesirable tasks can be viewed as "tool to marginalize and stigmatize" plaintiff relative to his peers). He also contends that he was excluded from meetings and lunch gatherings throughout his tenure at Crucial MDH, and that other, similarly situated employees, were not treated in the same manner. The day before he was terminated, he found his belongings thrown on the floor after stepping away from his workstation to complete a training. And finally, Alsayiri claims that he was terminated on the same day he escalated his concerns to Marc, the CEO. Liberally construing the complaint in favor of Alsayiri, the Court finds that he has sufficiently alleged discrimination claims under Title VII and Section 1981. *See Plata v. Eureka Locker, Inc.*, No. 12-1497, 2013 WL 1364092, at *6 (C.D. Ill. Apr. 3, 2013). Accordingly, the Court grants him permission to proceed *in forma pauperis* under 28 U.S.C. § 1915.

### B.  Motion for Recruitment of Counsel

Alsayiri also has filed a motion for recruitment of counsel. (Doc. 5). He explains that he is unable to represent himself because he cannot speak, read, or write well in English. *Id.* at 2. Moreover, despite his diligent efforts, he has been unable to find an attorney to represent him in this case. *Id.* at 1.

A district court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). However, civil litigants do not have a right, either constitutional or statutory, to court-appointed counsel. *Pruitt v. Mote*, 503 F.3d 647, 658 (7th Cir. 2007) (en banc). The Seventh Circuit has instructed courts to consider two factors when determining whether recruitment of counsel is warranted: (1) whether the plaintiff has made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and (2) given the difficulty of the case, whether the plaintiff appears competent to litigate it himself. *Id.* at 654.

The first factor is met here. Alsayiri's amended complaint contains five attachments reflecting communications from local law firms and attorneys that declined to represent him. The Court is thus satisfied that Alsayiri has made a reasonable effort to obtain counsel.

When considering the difficulty of the case, the Court must determine "the particular plaintiff's capacity as a layperson to coherently present" the case to the judge and jury. *Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014) (quoting *Pruitt*, 503 F.3d at 655). The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations,

and any other characteristics that may limit the plaintiff's ability to litigate the case." *Pennewell v. Parish*, 923 F.3d 486, 491 (7th Cir. 2019). In conducting this inquiry, the court must determine "whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Id.* (emphasis omitted).

Here, the Court notes that Alsayiri is a college graduate (Doc. 5 at 2) who presented his claim of employment discrimination in a detailed and articulate manner. Given that the Complaint has not yet been served on Defendant, the Court finds that Alsayiri is competent and able to litigate this action on his own at this early stage of the case. Should this case proceed to a point where the difficulty exceeds Alsayiri's capabilities, the Court is amenable to considering a renewed motion for recruitment of counsel.

## CONCLUSION

For the reasons stated above, Plaintiff Mohammed Alsayiri has adequately stated a claim for race, religious, and national origin discrimination under Title VII of the Civil Rights Act of 1967 and 42 U.S.C. § 1981.

Because Alsayiri has met the requirements of 28 U.S.C. §§ 1915(a)(1) & (e)(2), the Court **GRANTS** Plaintiff's Motion to Proceed *in forma pauperis* (Doc. 4).

The Court **DIRECTS** the Clerk of Court to provide Alsayiri with a USM-285 form. Alsayiri is **ORDERED** to return the completed form to the Clerk of Court. Upon receipt of the completed USM-285 form, the Clerk is **DIRECTED** to prepare and issue a summons for Defendant Crucial MDH and deliver a service packet consisting of the

summons, USM-285 form, and a copy of the Amended Complaint (Doc. 11), to the United States Marshals Service. The Court **DIRECTS** the United States Marshal, upon receipt of these documents, to serve a copy of the summons and Amended Complaint upon Defendant in any manner consistent with Rule 4, as directed by the Plaintiff. Costs of service shall be borne by the United States.

Alsayiri's Motion for Recruitment of Counsel (Doc. 5) is **DENIED without prejudice**.

**IT IS SO ORDERED.**

**DATED:  June 17, 2024**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**