## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MOHAMMED ALSAYIRI,

      Plaintiff,

v.

      Case No. 3:23-CV-03110-NJR

CRUCIAL MRO, LLC, and
MARC BURTON,

      Defendants.

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Mohammed Alsayiri ("Alsayiri") brings this employment discrimination action against his former employer, Crucial MRO, LLC ("Crucial"), and his supervisor, Marc Burton ("Burton") (collectively "Defendants"). (Docs. 3, 26). Alsayiri alleges that he was subjected to discrimination in the workplace based on his race, national origin, and religion, and that he was ultimately terminated from his position based on these protected characteristics. (Doc. 26, p. 2). Defendants have filed a motion to dismiss Alsayiri's second amended complaint on the basis that Alsayiri failed to timely exhaust his administrative remedies and because the complaint fails to comply with Federal Rule of Civil Procedure 10(b).

## BACKGROUND AND PROCEDURAL HISTORY

Before addressing the merits of Alsayiri's claims, the Court considers the scope of its review. Alsayiri has filed three complaints in this matter: an original complaint (Doc. 3), a first amended complaint (Doc. 11), and a second amended complaint (Doc. 26).

On October 25, 2023, the Court dismissed Alsayiri's original complaint on preliminary review without prejudice. (Doc. 9). Alsayiri then filed a first amended complaint on November 27, 2023, attaching over 100 pages of exhibits, some of which are relevant to the resolution of Defendants' motion to dismiss.[1] (Doc. 11 pp. 17-139). On September 6, 2024, Alsayiri moved to file a second amended complaint so that he could properly identify Crucial as "Crucial MRO LLC" (the first amended complaint had identified Crucial as "Crucial MDH"). (Doc. 24). Because this amendment "d[id] not alter the substance" of Alsayiri's claims, the Court granted him leave to file the second amended complaint. (Doc. 25). Alsayiri filed the second amended complaint on September 13, 2024, but did not include the exhibits he had attached to his first amended complaint. (Doc. 26).

Defendants' motion to dismiss attacks the allegations in Alsayiri's *second* amended complaint. (Docs. 30, 31). This is not entirely surprising as it is the most recent pleading Alsayiri filed, and apparently the complaint that was served on them. The Court will nevertheless consider the first amended complaint's exhibits as part of its review because they are necessary to an informed analysis of Defendants' motion to dismiss. *See Trustees of N.E.C.A./Local 145 I.B.E.W. Pension Plan v. Guizar*, No. 4:23-cv-04115, 2025 WL 1348904, at *1 n.2 (C.D. Ill. May 8, 2025) ("The Court properly considers exhibits attached to prior pleadings and motions to the extent they are central to Plaintiff's claims and not contradicted by the allegations in the Amended Complaint."); *Jones v. Metr. Life Ins. Co.*,

---

[1] The first amended complaint is somewhat confusingly labeled a "Sealed Response." (Doc. 11).

No. 19-cv-01616, 2021 WL 12094155, at *4 (N.D. Ill. Aug. 18, 2021) (considering *pro se* plaintiffs' "original and amended complaints together" on motion to dismiss); *Garcia v. Johnson*, No. 14 C 5177, 2016 WL 11969863, at *2 & n.1 (N.D. Ill. Feb. 19, 2016) (considering exhibits attached to original complaint but not attached to amended complaint in resolving motion to dismiss). This approach is also warranted under Federal Rule of Civil Procedure 10(c), which permits "[a] statement in a pleading [to] be adopted by reference elsewhere in the same pleading *or in any other pleading* or motion" (emphasis added).

### A. Alsayiri's Employment and Termination at Crucial

On November 29, 2021, Alsayiri met with an individual named "Sam" for a job interview at Crucial. (Doc. 26 p. 8). Alsayiri was hired "on the spot" as a full-time maintenance technician. (*Id.*; Doc. 11 p. 103). As a practicing Muslim, Alsayiri conducted two of five daily prayers during working hours. (Doc. 26 p. 8). On one occasion, Burton, the CEO of the company, saw Alsayiri praying. (*Id.*). From that moment on, Burton treated Alsayiri differently by speaking to him in a "gruff" tone and ordering him to complete menial tasks, like making and relocating shelves. (*Id.*).

On January 31, 2022, Burton instructed Alsayiri to work at another Crucial location in Foristell, Missouri, to help with a "tedlar interior renew project." (*Id.* p. 9). At the Foristell location, a coworker identified as "Carly" allegedly told Alsayiri in a disrespectful tone that he should work with an individual named "Eric" and not on the tedlar project. (*Id.*). This created a confusing situation for Alsayiri, who found himself trying to "avoid Carly" while completing the project he was assigned. (*Id.*).

The following week, Alsayiri returned to his original workstation in Murphysboro, Illinois. (*Id.* p. 10). At that time, he met a new manager named "Wesley." (*Id.*). Wesley did not have a key to the hangar, so Alsayiri made a copy of his key for Wesley, paying for it out of pocket. (*Id.*). Although Alsayiri apparently got along well with Wesley initially, he noticed that he was quickly excluded from Wesley's meetings with Burton and others. (*Id.*). Burton and Wesley also ordered lunches for the team but excluded Alsayiri. (*Id.*).

In late February 2022, Alsayiri traveled to Dallas with a coworker named "Eric." (*Id.* pp. 10-11). Alsayiri flew in first class and played golf on this trip, which gave him a "gut feeling that something was not right." (*Id.* p. 10) After Alsayiri returned from Dallas, Wesley allegedly approached him and asked him why he told Eric that he did not like his job. (*Id.* p. 11). Alsayiri denied telling Eric anything of the sort, but Wesley allegedly ended the conversation without a resolution. (*Id.*).

At this point, it became clear to Alsayiri that Burton and Wesley were treating him differently than his coworkers. Wesley frequently bought lunch for the team and invited them to eat as a group in a meeting room. (*Id.*). Alsayiri was excluded from these lunch meetings. (*Id.*). On March 16, 2022, Alsayiri approached his workstation after completing a training session and found his belongings thrown on the floor. (*Id.* p. 12). A day later, Burton, Wesley, and several other employees went outside to tour an airplane, and when Alsayiri followed them, Wesley approached him and asked him loudly, "What do you want?" (*Id.*). Because this interaction happened in view and earshot of Alsayiri's

coworkers, he was humiliated and embarrassed. (*Id.*).

On the morning of March 17, 2022, Alsayiri sent an email to Burton in hopes of improving his situation and standing at Crucial. (*Id.*). Later that morning, Wesley told Alsayiri that the company was "having some issues" and that there were no hours for him the following week. (*Id.*). Alsayiri was surprised by this news from Wesley because he had recently learned from a coworker named "Simon" that the company had increased his hours. (*Id.*). During this meeting, Alsayiri mentioned that he had been excluded from meetings and lunches and that this caused him to feel unwelcome. (*Id.*). Wesley responded by telling Alsayiri that he could quit if he wanted to do so. (*Id.*). When Alsayiri told him he would not quit but that he felt he had been treated unfairly, Wesley interrupted him, asking bluntly "Are you calling me a racist?" (*Id.*). Alsayiri tried to respond, but Wesley left the conversation and came back with Burton. (*Id.* p. 13). Burton then told Alsayiri, "I have heard enough, you are fired." (*Id.*). Burton demanded that Alsayiri return his key (the one he had paid for out of pocket), which Alsayiri did after breaking it in half. (*Id.*). Alsayiri then demanded a written termination letter, which Burton provided. (*Id.*).

### B. Equal Employment Opportunity Commission ("EEOC") Proceedings

The timing and scope of Alsayiri's submissions to the EEOC are not entirely clear. It is apparent that he filed a charge of discrimination with the EEOC and the Illinois Department of Human Rights on March 25, 2023 (Charge No. 560-2023-1404) (the "2023 Charge"). (Doc. 11 pp. 103, 113). This charge alleges that he was terminated due to his

race, national origin, and religion after he sent Burton an email in March 2022 complaining about his treatment. (*Id.* p. 103). On June 25, 2023, the EEOC dismissed the 2023 Charge as untimely and issued a right to sue letter. (*Id.* at 113).

But Alsayiri's submissions also reflect a separate EEOC matter that was initiated in 2022. A completed (but undated) "Pre-Charge Inquiry" form includes a field in which the complaining party is asked: "Have you already filed a charge on this matter with the EEOC?" (*Id.* at 108). Alsayiri responded in the affirmative, citing a charge he filed on April 23, 2022, which was assigned Charge No. 560-2022-1600 (the "2022 Charge"). (*Id.*). Alsayiri also submitted an "Inquiry Information" sheet associated with the 2022 Charge in response to Defendants' motion to dismiss, which offered relevant information about his discrimination claims. (Doc. 35-1, pp. 2-5). The disposition of the 2022 Charge is unclear based on the tenebrous record available at this point. All that is apparent is that the 2022 Charge was "closed," whereas the 2023 Charge was "submitted." (Doc. 35-1, p. 1).

After receiving the EEOC's June 2023 right to sue letter, Alsayiri brought this action under Title VII of the Civil Rights Act of 1967, as amended, 42 U.S.C. § 2000e-5 and/or 42 U.S.C. § 1981. (Doc. 3). Defendants now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d

635, 637 (7th Cir. 2012). The Court accepts as true the complaint's well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013).

To survive a Rule 12(b)(6) motion, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Plausibility does not mean probability: a court reviewing a 12(b)(6) motion must 'ask itself *could* these things have happened, not *did* they happen.'" *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). "A claim is plausible where a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A complaint, moreover, "need not anticipate or refute potential affirmative defenses." *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022). Affirmative defenses are thus generally resolved in a motion for judgment on the pleadings under Rule 12(c), not in a motion to dismiss under Rule 12(b)(6). *Holmes v. Marion Cnty. Sheriff's Off.*, 141 F.4th 818, 822 (7th Cir. 2025). Dismissal on the basis of an affirmative defense under Rule 12(b)(6) is only appropriate "if the affirmative defense is clear from the face of the complaint." *Id.*; *see also H.A.L. NY Holdings, L.L.C. v. Guinan*, 958 F.3d 627, 631-32 (7th Cir. 2020). "Only when the plaintiff pleads itself out of court— that is, admits all the ingredients of an impenetrable defense—may a complaint that

otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

## DISCUSSION

### A.  Failure to Exhaust

"Under Title VII, a plaintiff in Illinois must file an employment discrimination charge with the EEOC within 300 days 'after the alleged unlawful employment practice occurred.'" *Stepney v. Naperville School Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004) (quoting 42 U.S.C. § 2000e−5(e)(1)). "This requirement has two purposes: first, it allows the EEOC and the employer an opportunity to settle the matter, and second, it ensures that the employer has adequate notice of the conduct the employee is challenging." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). A plaintiff who fails to properly exhaust his administrative remedies is precluded from bringing a lawsuit under Title VII. *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 921 (7th Cir. 2007). The failure to exhaust is an affirmative defense, however, on which the defendant bears the burden of proof. *Id.* at 922.

Here, Defendants contend that Alsayiri failed to exhaust his administrative remedies because he did not file a charge with the EEOC until March 25, 2023 (the 2023 Charge). This charge, they correctly point out, was filed more than a year after he was terminated from his position at Crucial on March 17, 2022. At first blush, this argument appears compelling because the only charge for which Alsayiri submitted a right to sue letter was the 2023 Charge. *See Chaidez*, 937 F.3d at 1004 (exhaustion requires charge filing *and* "receiving a right to sue letter.").

But the 2023 Charge is not the only charge disclosed in the record. The undated "Pre-Charge Inquiry" form that was attached to the first amended complaint asked Alsayiri whether he had "already filed a charge on this matter with the EEOC." Alsayiri stated that he had—in the form of the 2022 Charge. The 2022 Charge was assigned Charge No. 560-2022-1600 and was filed on April 23, 2022, well within the 300-day filing window of Alsayiri's termination on March 17, 2022. Alsayiri submitted an "Inquiry Information" sheet associated with the 2022 Charge that provided, among other things, the reason for his complaint, a narrative blurb of his hiring and firing, and identified Crucial as the "respondent." (Doc. 35-1, pp. 1-5).

Defendants argue that the 2022 Charge was merely a "pre-charge inquiry submission" that cannot satisfy administrative exhaustion. They cite the Northern District of Illinois' decision in *Herrera v. Di Meo Broths., Inc.*, 529 F. Supp. 3d 819, 826-28 (N.D. Ill. 2021), for the proposition that a pre-charge inquiry is not "part of the charge of discrimination." (Doc. 40, p. 2). In *Herrera*, the Court addressed the question of whether an EEOC "charge" includes information contained in a "pre-charge inquiry." *Id.* at 827. The court acknowledged that a "charge" requires the filing in question to be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* (quoting *Fed Ex. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)). While this standard may be sensitive to the facts of each case, the pre-charge inquiry in *Herrera* presented an obvious problem for the plaintiff who wanted the court to consider it as part of the "charge." It contained

a bold warning on each page which read: "**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**." *Id.* at 828. The court declined to override this explicit limitation and thus concluded that the pre-charge inquiry was not part of the charge. *Id.*

Here's where it gets interesting. Alsayiri submitted a "Pre-Charge Inquiry" form as an exhibit to his first amended complaint that bears an identical warning in bold, capital letters as the one in *Herrera*. Under *Herrera*'s reasoning, this form is not considered part of the charge of discrimination for administrative exhaustion purposes. But Alsayiri does not have to rely on the pre-charge inquiry to satisfy administrative exhaustion at this early stage. Rather, the pre-charge inquiry contains a competent allegation of exhaustion because it identifies the 2022 Charge as one that was *previously filed*. The logical inference, then, is that the pre-charge inquiry that explicitly warned Alsayiri that it was not a charge was not part of the 2022 Charge because it was completed after the fact. That distinguishes this case from *Herrera* because, there, the plaintiff asked the court to consider the pre-charge inquiry itself as part of his "charge" to the EEOC.

At this stage, it is indeed unclear what came of the 2022 Charge. All we know is that Alsayiri alleges that he submitted it to the EEOC within the exhaustion period, and that it was eventually "closed." But this ambiguity cuts against Defendants, not Alsayiri. It is their burden to prove the applicability of the affirmative defense of exhaustion, not Alsayiri's to refute it. *Salas*, 493 F.3d at 922. Indeed, in *Salas*, although the plaintiff was unable to produce a copy of a timely charge, he offered a mailing receipt, showing that

the EEOC had received "something" from him within the exhaustion period. *Id.* at 921. The defendant, on the other hand, denied receiving the supposed timely charge, and thus sought summary judgment in its favor. *Id.* at 922. The Seventh Circuit found the evidence to be equivocal and thus, concluded that the defendant could not meet its burden. *Id.* Under such circumstances, the court explained, "the tie must go to the plaintiff." *Id.* Here, Alsayiri alleges that he submitted a charge to the EEOC on April 23, 2022. The record, as presented, does not invalidate that allegation. Thus, under a faithful application of Rule 12(b)(6), the Court must reject Defendants' exhaustion defense.

The Seventh Circuit has "often explained that it is particularly inappropriate to undermine the effectiveness of these [employment discrimination] statutes by dismissing claims merely because the victim of the alleged discrimination failed to comply with the intricate technicalities of the statute." *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 399 (7th Cir. 2019) (internal quotation marks omitted); *see also Huri v. Office of the Chief Judge*, 804 F.3d 826, 831 (7th Cir. 2015) ("Courts review the scope of an EEOC charge liberally."). The Court's decision today is consistent with these admonitions to avoid playing gotcha games with *pro se* litigants who are navigating the complexities of an employment discrimination claim. Defendants will, of course, have an opportunity to renew their administrative exhaustion argument after the close of discovery.

### B. Federal Rule of Civil Procedure 10(b)

Federal Rule of Civil Procedure 10(b) states that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of

circumstances." "The primary purpose of [Rule 10(b)] is to give defendants fair notice of the claims against them and the grounds supporting the claims." *Cincinnati Life Ins. Co. v. Beyer*, 722 F.3d 939, 946 (7th Cir. 2013) (quoting *Standard v. Nygren*, 658 F.3d 792, 792 (7th Cir. 2011)). "If neither the adverse party nor the court can make out the essence of the claims, dismissal of a complaint on the ground that it is unintelligible is unexceptionable." *Id.* (internal quotation marks omitted). Defendants contend that Alsayiri's amended complaint flunks the Rule 10(b) standard because his claims "were presented in a highly unclear manner."

Defendants' argument is unconvincing. The Court preliminarily addressed the viability of Alsayiri's claims in its order granting him permission to proceed *in forma pauperis*. (Doc. 15). In that order, the Court found that Alsayiri "offer[ed] detailed allegations of discriminatory and demeaning treatment he experienced over his three-and-a-half-month employment at Crucial," and that he had "sufficiently alleged discrimination claims under Title VII and [42 U.S.C. § 1981]." (*Id.*). Implicit in this finding was a recognition that Alsayiri's amended complaint satisfied minimum pleading standards under the Federal Rules of Civil Procedure. The Court had little difficulty making out "the essence" of Alsayiri's claims and thus finds that dismissal under Rule 10(b) is not appropriate.

Defendants are nevertheless correct that the amended complaint does not reveal perfect compliance with Rule 10(b); for instance, it fails to offer "numbered paragraphs" that would help the reader match distinct factual allegations to specific legal theories. The

Court will thus order Alsayiri to amend his complaint so that he may reformat it to bring it into compliance with Rule 10(b). *See Pratt v. Ill. Dep't of Corr.*, No. 06-cv-847, 2007 WL 1320626, at *3 (S.D. Ill. May 3, 2007) ("Rather than dismissing the complaint outright, the Court orders the plaintiffs to amend their complaint to comply with the requirements of Rule 10(b)").

## CONCLUSION

For these reasons, Defendants' motion to dismiss Alsayiri's amended complaint (Doc. 30) is **DENIED**. Alsayiri shall file, **October 15, 2025,** a third amended complaint that is compliant with the requirements of Federal Rule of Civil Procedure 10(b). The Court will set a scheduling conference by separate order.

**IT IS SO ORDERED.**

**DATED:  September 17, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**