**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **MOHAMMED ALSAYIRI,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CRUCIAL MRO, LLC, and MARC BURTON,**<br><br>**Defendants.** | **Case No. 3:23-CV-03110-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on Plaintiff Mohammed Alsayiri's motion for spoliation sanctions and to compel production. (Doc. 92). For the reasons explained below, the motion will be granted in part.

## Background

### 1. Factual Allegations

In his Fourth Amended Complaint (Doc. 82), Plaintiff Mohammed Alsayiri alleges that he was terminated from his role as an aviation maintenance technician for Defendant Crucial MRO, LLC ("Crucial") because of his race, national origin, and religion. He also alleges that Crucial and its CEO, Marc Burton, retaliated against him for reporting discrimination he experienced on the job.

Alsayiri alleges that he was terminated from his job on March 17, 2022, after he submitted an internal complaint via email to Burton regarding alleged discrimination with the subject line, "Harassment report." (Doc. 82, ¶¶ 63-65, 84). In his email, Alsayiri described alleged mistreatment from a Crucial employee and inquired whether it was "because [of] my

ethnic[,] culture[,] religion[,] whatever she [has] in her head." Burton replied that he would have HR look into the matter. (*Id.* ¶¶ 65-66).

Later that day, Wesley Perkins, Alsayiri's supervisor, informed him he would not be given any hours the next week. (*Id.* ¶¶ 74-75). Alsayiri expressed surprise and stated that he felt unwelcome at the company. (*Id.* ¶¶ 76-77). Perkins then asked whether Alsayiri was calling him a racist; Alsayiri responded that he was not. (*Id.* ¶ 80). Perkins then spoke to Burton, who told Alsayiri that he was fired. (*Id.* ¶ 82).

Crucial then directed Southern Illinois Airport police to inform Alsayiri that he was banned from airport property. (Doc. 92-2). A police officer also spoke to Alsayiri's wife, who informed him that she had already called an attorney and that Crucial's other employees "were all racists." (*Id.*). Perkins received a copy of the police report describing the conversation with Alsayiri's wife the next day. (Doc. 92-3). At some point later, Crucial had several employees write statements documenting the events leading up to Alsayiri's termination. (Docs. 92-3, 92-4, 92-5).

Alsayiri filed this lawsuit on September 15, 2023, without the assistance of counsel. The Court later recruited attorney Eric Swibel from Latham & Watkins to represent him. (Doc. 60). In his presently operative complaint, Alsayiri pursues claims against the Crucial and Burton under Title VII, the Illinois Human Rights Act (IHRA), and 42 U.S.C. § 1981.

2. Discovery Dispute

Alsayiri characterizes Defendants' responses to his discovery requests as "limited, evasive, incomplete." (Doc. 92, p. 3). The initial production consisted of 169 pages, more than half of which were various training certificates from an online training program. The

production also failed to include details required by the parties' ESI protocol. (Doc. 90). Initially, defense counsel informed Alsayiri that Crucial had switched email systems and that they would probably be "able to locate its previous system." (Doc. 92-20). Counsel also indicated that Crucial was not conducting a review of employees' personal devices but was asking them individually if they had responsive materials. During a meet-and-confer on August 3, 2026, however, Crucial's counsel confirmed that all emails from around March 2022 had been deleted, as were emails from other employees when they left the company, in part due to an auto-deletion feature. (Doc. 92-1, ¶¶ 26-27).

On August 11, 2026, Alsayiri filed the present motion, which seeks spoliation sanctions under Rule 37(e) based on Crucial's failure to preserve emails from the time surrounding his termination. It also seeks an order compelling counsel for Defendants to conduct a custodial review of certain employee devices used for work purposes. The Court held a hearing on the motion on October 20, 2026, and the parties both filed supplemental submissions. (Docs. 109, 115).

## **1. Motion for Spoliation Sanctions**

### LEGAL STANDARD

Rule 37(e) focuses specifically on electronically stored information (ESI) and authorizes sanctions if that information "should have been preserved in the anticipation or conduct of litigation [and] is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Courts have broken the provision down into five requirements:

> (1) the information must be ESI; (2) there must have been anticipated or actual litigation that triggers the duty to preserve ESI; (3) the relevant ESI should have

> been preserved at the time of the litigation was anticipated or ongoing; (4) the ESI must have been lost because a party failed to take reasonable steps to preserve it; and (5) the lost ESI cannot be restored or replaced through additional discovery.

*Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 617 (N.D. Ill. 2022).

If each of those requirements are met, and the Court finds the moving party suffered prejudice as a result of the missing information, it "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If, however, the Court finds that a party with a preservation obligation "acted with the intent to deprive another party of the information's use in the litigation," more severe sanctions are available, including an instruction to the jury "to presume the information was unfavorable, or entering dismissal or default." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 958-59 (N.D. Ill. 2021) (citing Fed. R. Civ. P. 37(e)(2)).

## Discussion

Alsayiri argues that Crucial's duty to preserve relevant evidence arose on March 17, 2022, the day he was fired. He says that the deletion of contemporaneous emails prejudices his ability to prove his claims, as email communications are frequently a powerful source of evidence in employment cases. Alsayiri contends that Crucial's failure to prevent the deletion of emails, combined with its repeated discovery delays and violations of the ESI protocol, amount to the "bad faith" necessary to support an adverse-inference sanction under Rule 37(e)(2).

Crucial responds that its duty to preserve evidence would have arisen, at the earliest, when it received notice of Alsayiri's EEOC charge in May 2023. It adds that Alsayiri can only speculate that the emails he seeks would have contained evidence favorable to his position,

and he has access to some of the emails that were deleted in any event. It also argues that Alsayiri lacks no evidence that it deleted emails with the requisite intent to prevent him from using them in this litigation.

**a. Whether the information is ESI?**

There is no dispute that the emails Alsayiri seeks were ESI.

**b. Was litigation anticipated that triggered a duty to preserve ESI?**

The parties hotly contest whether and, if so, when Defendants were under a duty to preserve the emails Alsayiri seeks. The duty to preserve is defined by the common law, which generally imposes a preservation obligation "when litigation is commenced or reasonably anticipated." *Hollis*, 603 F. Supp. 3d at 619. A party has a duty to preserve evidence when he knows, or should have known, that litigation is imminent. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). Certain actions, such as the receipt of a demand letter or an express threat of litigation, almost invariably trigger a preservation duty; beyond those instances, however, "the analysis is highly case specific and fact dependent." *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 512 (S.D. W. Va. 2014).

Alsayiri argues that Crucial's duty to preserve began on March 17, 2022. He points to three facts in support of that theory: (1) the March 17, 2022 email he sent to Burton reporting discrimination and harassment, (2) his wife's statement to an airport police officer that she had consulted with an attorney, memorialized in a report that was shared with Crucial's leadership, and (3) Crucial's decision to take witness statements regarding his termination. Defendants push back on several fronts. They argue that Alsayiri's letter was not sufficiently clear to put them on notice of the nature of his complaints and was sent *before* he was

terminated. In their supplemental brief, they add that the allegations of harassment contained in the letter dealt only with a single individual employed by a separate entity called Crucial Unlimited. It also says that a preservation duty does not arise automatically when an employer investigates an internal complaint or seeks legal guidance.

The combination of factors here should have put Crucial on notice that litigation was imminent. To start, Alsayiri wrote directly to Defendant Burton regarding a dispute with an individual named Carley Erson. (Doc. 92-5, p. 1). Notably, the subject line of the email was "Harassment report." (*Id.*). In the email, Alsayiri speculated whether the mistreatment he alleged was "because of [his] ethnic culture religion whatever [sic]." (*Id.* at p. 2). Defendants characterize Alsayiri's email as focused only on an employee who worked for Crucial Unlimited—a separate legal entity—and emphasize that it did not discuss mistreatment from its employees. This argument conflates the merits of a lawsuit with the question of whether a lawsuit was reasonably foreseeable. Here, the letter should have prompted concerns from both entities about litigation. Based on the parties' representations at the recent hearing, the two Crucial entities were closely related, sharing the same leadership. (Doc. 114, pp. 20-23). Alsayiri had been instructed by his supervisors to attend trainings at Crucial Unlimited. (*Id.* at pp. 20-21). And Burton apparently informed Alsayiri that he would have Crucial's HR department investigate his allegations. It is not clear that Alsayiri understood the entities to be distinct (or that Burton treated them that way). Rightly or wrongly, Alsayiri named Crucial as the defendant. The question is whether Crucial should have anticipated litigation, not whether it will have a strong defense on the merits.

To be sure, Alsayiri's "Harassment report" is not slam-dunk evidence that Defendants

ought to have preserved the missing emails. For one, his request is not completely pellucid; Alsayiri does not state clearly what he wished Burton to do about Ms. Erson. It also does not explicitly mention litigation. Standing alone, the email likely would not have put Defendants on notice that litigation was imminent. *See Malhotra v. CVS Health, Inc.*, No. 24 CV 4769, 2025 WL 2083689, at *8 (N.D. Ill. May 15, 2025) (finding that an employee's internal complaint that did not mention litigation and requested informal resolution of the issue did not trigger a duty to preserve); *Chatman v. Trugreen Ltd. P'ship*, No. 22-CV-2705-TLP-TMP, 2023 WL 8284401, at *3 (W.D. Tenn. Nov. 30, 2023) ("Merely making an internal complaint is generally not sufficient to trigger the duty to preserve."). Of course, some courts have concluded that internal reports of discrimination and harassment *are* sufficient to trigger a duty to preserve. *See Hollis*, 603 F. Supp. 3d at 620 (finding sufficient a "formal letter of complaint . . . for workplace race discrimination"); *Eller v. Prince George's Cnty. Pub. Schs.*, No. TDC-18-3649, 2020 WL 7336730, at *4 (D. Md. Dec. 14, 2020) ("Plaintiff's February 2015 incident report about the harassment she experienced by a staff member should also have alerted Defendants to the need to preserve potentially relevant evidence for use in future litigation."); *see also Boutilier v. Menard Inc.*, 606 F. Supp. 3d 860, 865 (C.D. Ill. 2022) (finding that an employee's incident report documenting a customer's injury put the defendant on notice of litigation). Although the Court does not assign dispositive weight to Alsayiri's email, it is a relevant factor. Significantly, it was not Alsayiri's sole complaint about the workplace: Wesley Perkins, Crucial's Director of Maintenance (and Alsayiri's supervisor), testified at his deposition that Alsayiri had called him a racist. (Wesley Perkins dep., Doc. 109-2, p. 28).

Other factors also suggest that Defendants had a preservation obligation. Crucial was

aware that Alsayiri's wife contacted the airport police the day he was terminated and reportedly stated that the employees at Crucial "were all racists." She also stated that "she had already called an attorney, and had told the attorney what had happened." (Doc. 92-2). The police officer included these statements in his report, which he provided to Crucial's management the next day. (Doc. 92-3). At oral argument, Defendants claimed that they did not receive the police report until long after the incident. (Doc. 114, p. 6). That assertion is belied by the record. In his signed statement describing Alsayiri's termination, Perkins wrote that he "received a copy of the incident report from" the airport police "[o]n the morning of 3/18/2022." (Doc. 92-3). His statement includes a case number for the report that matches the airport police report where Alsayiri's wife's comments are recorded. (*Compare* Doc. 92-3 *with* Doc. 92-2). Knowledge that an opposing party has contacted an attorney is powerful evidence that litigation should reasonably be anticipated.

Defendants asserted during the recent hearing that merely stating that one has contacted an attorney does not suffice to trigger the duty to preserve. (Doc. 114, p. 6). Unfortunately, they do not cite any cases directly on point. It is true that in other contexts, such as determining whether a document constitutes attorney work product, courts have stated that "[t]he fact that litigation actually ensues *or that a party has retained an attorney*, initiated investigations, or engaged in negotiations over a claim, is insufficient to dispositively establish anticipation of litigation." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 87 (N.D. Ill. 1992) (emphasis added). But it is not clear that standard carries over into this context. (No party has briefed the issue.) In any event, the Court views the statement of Alsayiri's wife as just one factor suggesting that Defendants should have

anticipated litigation—not necessarily the dispositive one.

Finally, and perhaps most telling, is how Defendants acted in the immediate aftermath of Alsayiri's termination. Notably, Crucial took statements from several employee witnesses. (Docs. 92-3, 92-4, 92-5). Metadata from the witness statements demonstrates they were drafted in the days immediately following Alsayiri's termination. (Doc. 109-1). And Crucial directed the preservation of video footage of Alsayiri's termination from airport security cameras. (Doc. 109-2, p. 79). Defendants also contacted their attorneys the day of Alsayiri's firing. (Doc. 109-3, p. 10). All of this is compelling evidence that they anticipated litigation. *See Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 293 (D. Md. 2023) ("Defendants' anticipation of litigation is also supported by the fact that, several days after receiving plaintiff's written appeal of the nonrenewal decision, [they] each sought legal advice from FSU's in-house counsel."). Defendants argue that treating their actions as evidence they anticipated litigation conflates "routine Title VII compliance and corporate legal consultation" with litigation conduct. (Doc. 115, p. 2). True, a company likely cannot be said to anticipate litigation every time it conducts an internal investigation into an incident in the workplace. But when viewed in light of their preservation of *some records* after becoming aware of Alsayiri's wife's statement that she had consulted an attorney, Defendants' actions here take on a different tenor.

Based on all of these factors, the Court finds that Defendants' duty to preserve began on March 18, 2022, when a Crucial employee received a copy of the police report mentioning the call from Alsayiri's wife. (Doc. 92-3, p. 2).

**c. Was the ESI relevant?**

To prevail on a motion under Rule 37(e), Alsayiri also must show that ESI should have been preserved. This question "amounts to whether the ESI is relevant." *Hollis*, 603 F. Supp. 3d at 620. Neither party discusses this issue in great detail. That omission likely reflects the reality that email communications among key decisionmakers in the time surrounding an adverse employment action will almost invariably be relevant in the mine-run of employment cases. Moreover, the Court finds that Alsayiri's proposed ESI search parameters (Doc. 92-14, pp. 3-5) likely would have yielded relevant, discoverable emails, had they been preserved.

**d. Was the ESI lost because a party failed to take reasonable steps to preserve it?**

The Court further finds that Defendants failed to take reasonable steps to preserve the ESI. *See* Fed. R. Civ. P. 37(e). Most critically, they did not halt the autodeletion of emails at the time they were under a duty to preserve evidence. Defendants effectively admit as much, arguing their duty to preserve did not begin until they were served with Plaintiff's third amended complaint in September 2024 or received his EEOC charge in May 2023. (Doc. 92-25, p. 5; Doc. 99, p. 7). As discussed above, the Court disagrees.

Defendants also argue that they were not obligated to preserve certain materials, such as emails from the accounts of individuals who were not their employees. Right or wrong, this does not answer what steps, if any, they took to preserve documents that undoubtedly would have been responsive. Defendants further argue that their attorneys were entitled to rely on Defendant Burton and Crucial employee Wesley Perkins to conduct ESI searches. Again, this argument is beside the point. The relevant inquiry is whether these individuals

took reasonable steps to *preserve* the documents, not whether they conducted reasonable searches after the fact. Defendants point to no evidence that anyone attempted to preserve emails on Crucial's servers from the period between February and March of 2022. (Doc. 91-1, ¶¶ 25-26).

**e. Can the lost ESI be replaced through reasonable additional discovery?**

Next, the Court finds that the lost ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). This inquiry focuses on the availability of "digital backups and the likelihood that electronic documents have multiple versions." *Freidig v. Target Corp.*, 329 F.R.D. 199, 208 (W.D. Wis. 2018). It is apparent that the email records here are lost irretrievably; neither Alsayiri nor Defendants offer any indication that emails from the relevant time-period are likely to exist elsewhere. Defendants note that Alsayiri possesses one email he received from Burton, but that fact goes to whether he can show prejudice rather than whether the emails can be recovered by alternate means. *Id.*

**f. Sanctions**

Having concluded that Alsayiri has satisfied Rule 37(e)'s five threshold requirements, he must show that he is entitled to relief. The scope of that relief turns on whether Alsayiri merely suffered prejudice from the lost information or if Defendants intended to deprive him of the ESI. *Hollis*, 603 F. Supp. 3d at 617. Alsayiri attempts to make both showings. To start, he locates prejudice in his inability to review the lost emails for evidence that would burnish his discrimination and retaliation claims. He notes that emails frequently provide the proverbial "smoking gun" in employment discrimination cases. Defendants respond that the loss of these emails was not prejudicial since Alsayiri has access to at least one email from a

key decisionmaker (the email from Burton discussed above), and he offers only speculative assertions that the lost emails would benefit his case.

Courts have observed that assessing prejudice "can be a dicey proposition," particularly in cases where there is no ESI to review and no extrinsic evidence about what the missing evidence would show. *Hollis*, 603 F. Supp. 3d at 623; *In re Loc. TV Advert. Antitrust Litig.*, No. 18 C 6785, 2023 WL 5607997, at *5 (N.D. Ill. Aug. 30, 2023). For that reason, "the rule does not place a burden of proving or disproving prejudice on one party or the other," leaving the court with discretion as to how to weigh prejudice in a particular case. *See* Rule 37(e) advisory committee's note to 2015 amendment.

Defendants' loss of all emails from the time surrounding Alsayiri's employment and termination amounts to prejudice in the circumstances here. "'Prejudice' under Rule 37(e) includes the thwarting of a party's ability to obtain the evidence it needs for its case." *Hollis*, 603 F. Supp. 3d at 623 (quoting *J.S.T. Corp. v. Robert Bosch, LLC*, No. 15 CV 13842, 2019 WL 2324488, at *5-6 (E.D. Mich. May 30, 2019)). The party attempting to show prejudice "must only come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been." *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 430 (W.D.N.Y. 2017) (citation omitted). "While the moving party need not establish the loss of a 'smoking gun,' it is sufficient if the existing evidence plausibly 'suggests' that the spoliated ESI could support the moving party's case." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 495 (S.D.N.Y. 2022) (cleaned up). The prejudice need not be "substantial"— "*some* prejudice" is enough. *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 47 (D.D.C. 2019).

The emails sought by Alsayiri likely would have been a trove of relevant information.

*See BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, No. 15 C 10340, 2018 WL 1616725, at *10 (N.D. Ill. Apr. 4, 2018) ("It cannot be denied that in the world in which we live emails of a party's employees may be the most compelling form of evidence."). To be sure, "a court may not merely presume prejudice from the fact that relevant ESI has been lost." *United States ex rel. Staggers v. Medtronic, Inc.*, 830 F. Supp. 3d 49, 79 (D.D.C. 2026). Here, however, Alsayiri says the lost emails could have revealed "comments, attitudes, and biases that substantiate his discrimination claims." (Doc. 92, p. 15). He, of course, has little in the way of proof the lost emails *do include* inculpatory materials that would aid his case. Nevertheless, the Court believes he has sufficiently demonstrated prejudice, in no small part because the volume of lost material is substantial in the context of the case. *See J.S.T. Corp.*, 2019 WL 2324488, at *6 (noting that prejudice "can be properly understood as a party's ability to obtain the proofs necessary for its case, which is another way of saying the loss of ESI could negatively impact a party's ability to make its case" (cleaned up)).

The documentary record covering Alsayiri's employment at Crucial is remarkably thin. Crucial's initial document production amounted to 169 pages in total. (Doc. 96-1, ¶ 6). More than half of that total consisted of training certificates from an online training provider. (*Id.*). The remainder included the aforementioned statements from Crucial employees, Alsayiri's termination letter, the police report, and Alsayiri's "Harassment report" email. (Doc. 92-12). Crucial does not appear to have substantially supplemented its initial production. Given the paucity of evidence in the record and the ESI search terms proposed by Alsayiri's counsel (Doc. 92-14), it is probable that the missing ESI would have comprised a substantial portion of the total discovery. Among other things, it is likely that the emails

would have shed light on Crucial's rationale for attempting to reduce Alsayiri's hours before he was fired, his interactions with other employees, and the reasons employees prepared statements in the wake of his termination. (Doc. 92-3). These matters doubtless would aid his case.

Defendants argue that Alsayiri has access to "emails from March 17 and at least some of his direct communications with Defendants." (Doc. 99, p. 9). True, he apparently has access to *an email* from Burton stating that he sent the "Harassment Report" to Crucial's Human Resources department, but he is seeking a far broader universe of communications—those he *was not* sent and would not possess because they were sent to and among other individuals. Defendants also argue that Alsayiri has offered no evidence regarding the nature and importance of the missing documents, and his belief that they include favorable evidence is speculative. The Court agrees that Alsayiri can only speculate on the nature of the missing documents; the limited document production in this case makes that almost necessarily true. But Rule 37(e) does not require Alsayiri to provide evidence that a smoking gun existed and is now missing. It is enough that he has articulated why it is likely the missing evidence was important to his case. He has satisfied that standard. It should come as no surprise, particularly in the modern world, to conclude that ESI from the time of an employee's firing would be important to an employment discrimination case. Alsayiri has established prejudice.

If Alsayiri is to benefit from the heightened sanctions outlined in Rule 37(e)(2), the Court must determine if Defendants "intended to deprive" him of the ESI. *See DR Distribs., LLC*, 513 F. Supp. 3d at 958. As with prejudice, intent, naturally, can be difficult to prove.

*Hollis*, 603 F. Supp. 3d at 623. "The evidence used to establish intent is almost always circumstantial, not that there is anything wrong with that." *Id.*

Citing *Pable v. Chicago Transit Authority*, 145 F.4th 712 (7th Cir. 2025), Alsayiri argues that a "bad faith" standard governs this inquiry. But the court of appeals did not approve a "bad faith" standard in that case. Tracking the language of the rule, the Seventh Circuit affirmed the district court's sanctions based on its finding that the plaintiff "intentionally spoliated" the ESI. *Pable*, 145 F.4th at 720. To be sure, courts frequently have used the phrase "bad faith" when discussing the intent standard. This likely is at least partly attributable to caselaw applying the pre-2015 version of Rule 37(e). The prior rule precluded courts from sanctioning parties for "failing to provide electronically stored information lost as a result of the routine, *good-faith* operation of an electronic information system." Rule 37(e) (2006) (emphasis added).

In any event, courts that use the term "bad faith" likely do not intend to diverge from the Rule's current intent requirement. For instance, in *Fitzpatrick v. Nys*, 861 F. App'x 108, 110 (7th Cir. 2021), the Seventh Circuit stated that "[a] showing of bad faith is [] necessary" for sanctions, citing *Bracey v. Grondin,* 712 F.3d 1012, 1019 (7th Cir. 2013), a case pre-dating the 2015 amendment to Rule 37(e). *Bracey*, in turn, made clear that "[a] party destroys a document in bad faith when it does so 'for the purpose of hiding adverse information.'" 712 F.3d at 1019 (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008)). Thus, any conceptual distinction between "bad faith" and "intent" is likely immaterial in practice. Nevertheless, this Court believes the term "bad faith" tends to muddy the waters and impose an unnecessary layer of abstraction from the core question posed by Rule 37(e)(2): whether a

party intended to deprive another of ESI.

On that question, Alsayiri cites Crucial's failure to take reasonable measures to prevent the deletion of emails during the migration to a new email system and its failure to suspend the autodeletion of the emails of departing employees. Defendants respond that this evidence is insufficient to demonstrate that any emails were destroyed with the requisite intent.

The Court agrees with Defendants. At most, Alsayiri has shown that Crucial and Burton were negligent in failing to ensure emails were preserved during the system migration and when employees left the company. *See Cox Automotives, Inc. v. Super Dispatch Inc.*, No. 4:24-CV-00292-DGK, 2025 WL 3146682, at *6 (W.D. Mo. Nov. 11, 2025) (explaining that opposing counsel's failure to issue a litigation hold "is best described as gross incompetence or gross negligence, not intentional destruction"). There is no evidence suggesting that Defendants acted so that Alsayiri specifically would be deprived of evidence. As far as the Court can tell, some of the emails were lost due to a poorly thought-out system migration, while others were likely lost due to a negligent failure to suspend the system's autodeletion features.

Alsayiri relies on *Weitzman v. Maywood, Melrose Park, Broadview School District 89*, No. 13 C 1228, 2014 WL 4269074, at *3 (N.D. Ill. Aug. 29, 2014), for the proposition that "a party's failure to suspend the automatic deletion of emails or take reasonable steps to preserve messages constitutes bad faith." (Doc. 92, p. 16). *Weitzman* does include language to that effect. *See* 2014 WL 4269074, at *3 ("[A] party's failure to halt document destruction policies, leading to the destruction of relevant material is evidence of bad faith."). However, adopting

that standard would risk equating a party's mere failure to take reasonable steps to preserve ESI with the necessary intent. Rule 37(e)(2)'s heightened standard would be satisfied in the mine-run of cases. That cannot be the rule. Without more, a party's mere failure to preserve evidence is insufficient to demonstrate intent.

Moreover, even in *Weitzman*, the district court found it notable that the defendant offered little explanation for the destruction of the records, which is not the case here. This case is closer to *Karsch v. Blink Health Ltd.*, No. 17CV3880VMBCM, 2019 WL 2708125, at *22 (S.D.N.Y. June 20, 2019), where the court declined to find that a party acted intentionally where it "took down" an email server despite having received a demand letter, because the defendant plausibly explained that it was in the process of transferring business to a successor entity. The Court finds that there is insufficient evidence to support a finding of intent on this record.

Having found prejudice but not intent, the Court must look only to remedies authorized by Rule 37(e)(1). That rules out Alsayiri's request for an adverse inference instruction to the jury that the deleted emails would have been unfavorable to Defendants, as that relief is only available under subsection (e)(2). In the alternative, Alsayiri asks the Court (1) to instruct the jury that it can consider the circumstances surrounding the lost ESI, (2) an order precluding Crucial from arguments regarding the absence of discriminatory statements in 2022, and (3) an order precluding Crucial from introducing any later-discovered emails. He also seeks attorney's fees and costs incurred in connection with its sanctions motion and for Crucial's failure to appear for a Rule 30(b)(6) deposition, which would have focused on document retention and production issues. Defendants do not

expressly address which sanction is appropriate in their briefs.

The Advisory Committee notes feature a non-exhaustive list of potential sanctions available under Rule 37(e)(1), such as "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." Rule 37(e)(1) advisory committee notes to 2015 amendment. Additionally, the Seventh Circuit has held that courts are authorized to award costs and attorney's fees. *Pable*, 145 F.4th at 723. Of course, the Court's chosen sanction must be "no greater than necessary to cure the prejudice and must not "have the effect of measures that are permitted under subdivision (e)(2)." Rule 37(e)(1) advisory committee notes to 2015 amendment.

Here, the Court believes instructing the jury "that it can consider the circumstances surrounding the loss of the ESI" is an appropriate sanction. *Hollis*, 603 F. Supp. at 625. The Court will consult with the parties before trial regarding the specific form this instruction should take. The Court will also bar Defendants from using any later-discovered emails in support of their case, either at summary judgment or trial, and from making arguments based on the purported absence of discriminatory statements in 2022. However, the Court finds that an award of costs and attorney's fees is unnecessary.

**<u>2. Motion to Compel</u>**

Considering the spoliation of Crucial's emails, Alsayiri expresses concern that Defendants failed to adequately respond to his other document requests, which sought review of the personal email accounts and cell phones of certain Crucial employees. He seeks

an order directing "Crucial to conduct custodial review using the search parameters proposed in Plaintiff's May 14 Letter [(Doc. 92-14)] and produce all relevant information contained on all Crucial data systems (not limited to email) and the personal email accounts and mobile devices of the listed custodians." (Doc. 92, p. 19). Defendants object that they do not control the devices and accounts of employees and that fulfilling the scope of Alsayiri's request would require them to violate the Illinois Right to Privacy in the Workplace Act, 820 Ill. Comp. Stat. 55/10.

Alsayiri's counsel noted at the hearing that recent discovery indicates that Defendants did not undertake proper records searches and that the process was overseen by Defendant Burton and Crucial employee Wesley Perkins, two individuals who are witnesses to his claims. Defense counsel countered that she had personally supervised Defendant Burton and other Crucial witnesses as they searched devices for responsive materials.

Based on the parties' representations, the Court finds that it is appropriate to direct Defendants to conduct a renewed review for records using the search terms and custodians specified in Plaintiff's May 14 Letter (Doc. 92-14)—or such other terms as may be agreed upon. For the avoidance of doubt, Defendants are only obligated to search those devices and accounts that are in their possession, custody, or control. Consistent with the ESI order (Doc. 90), the parties shall meet and confer regarding the search methodologies and production formats to be used for each category of electronically stored information. Defendants shall complete their review on or before December 4, 2026.

## Conclusion

For these reasons, Alsayiri's motion for spoliation sanctions and to compel production

(Doc. 92) is **GRANTED in part** and **DENIED in part**. Defendants may not use any later-discovered emails in support of their case, either at summary judgment or trial, and may not make arguments based on the purported absence of discriminatory statements. In advance of trial, the parties shall submit an appropriate jury instruction regarding the lost ESI with their proposed jury instructions. Defendants shall complete a custodial review for other ESI as specified above and produce any responsive documents **on or before December 4, 2026**.

**IT IS SO ORDERED.**

**DATED: November 3, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**